UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENERAL ELECTRIC CAPITAL CORPORATION,
and AVN AIR, LLC,

                              Plaintiffs,

        -v-                                          No. 06 Civ. 4795 (LTS)(FM)

TITAN AVIATION, LLC, GODWIN GRUBER,
PC, and GODWIN, PAPPAS, LANGLEY,
RONQUILLO, LLP, f/k/a GODWIN GRUBER, LLP,

                              Defendants.

## OPINION AND ORDER

APPEARANCES:

REED SMITH, LLP
  By: Todd Toral, Esq.
        Darren Pascarella, Esq.
599 Lexington Avenue
New York, NY 10022

*Attorneys for Plaintiffs*

KENNEDY, JOHNSON, GALLAGHER,
LLC
  By: James W. Kennedy, Esq.
        John M. Magliery, Esq.
99 Wall Street, 15th Floor
New York, NY 10005

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs General Electric Capital Corporation ("GE Capital") and AVN Air LLC ("AVN") (collectively "Plaintiffs") bring suit against Titan Aviation, LLC ("Titan"), Godwin Gruber, P.C., ("Godwin Gruber") and Godwin Pappas Langley Ronquillo, LLP, f/k/a Godwin Gruber, LLP ("Godwin Pappas") (collectively "Defendants"). Plaintiffs allege breach of a lease agreement by Titan and breach of guarantee agreements by Godwin Gruber and Godwin Pappas. The Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332. Defendants move to dismiss the Complaint for lack of personal jurisdiction and improper venue or, alternatively, to transfer venue to the Northern District of Texas. The Court has considered thoroughly all the parties' submissions and, for the following reasons, denies Defendants' motion in its entirety.

### BACKGROUND

The following facts, alleged in the Complaint and in Plaintiffs' submissions in connection with the instant motion practice, are taken as true for the purposes of the instant motion to dismiss. GE Capital is a Delaware corporation with a principal place of business located in Connecticut. (Compl. ¶ 1.) AVN, an entity owned and controlled by GE Capital, is a Delaware limited liability company with a principal place of business located in Connecticut. (Id. ¶ 2.) Titan, a wholly owned entity formed by Godwin Gruber, is a Texas limited liability company with a principal place of business located in Texas. (Id. ¶ 3.) Godwin Gruber formed Titan for the sole purpose of leasing and taking possession of an aircraft and operating the aircraft in connection with Godwin Gruber's business. (See Decl. of Krista Spada in support of Pl.'s Opp. to Mot. to Dismiss, "Spada Decl.," ¶ 8.) Godwin Gruber is a Texas professional corporation with a principal place of business located in Texas. (Compl. ¶ 4.) Godwin Pappas is a Texas limited liability partnership with a principal place of business located in Texas and

whose members are citizens of states other than Delaware and Connecticut. (Id. ¶ 5.) At some point in December 2004, Godwin Gruber wound down its professional corporation operations and changed its business form to a limited liability partnership, becoming Godwin Pappas. (See Spada Decl. ¶ 48; Compl. ¶ 17.)

On or about April 2002, Godwin Gruber solicited non-party Key Capital Inc. ("Key") for the purpose of leasing an aircraft. (See Spada Decl. ¶ 8.) At all relevant times, Defendants dealt with Key's office in Albany, New York. (See id. ¶¶ 3-4, Compl., Ex. A.) Under the proposed transaction, Key would purchase an aircraft from a third party (here, Raytheon Aircraft Company) and would subsequently lease it to Titan. (See Spada Decl. ¶ 9.) During the month of April 2002, Key and Godwin Gruber participated in a series of conversations by telephone in furtherance of the proposed lease transaction. (See id ¶ 10.) On or about April 16, 2002, Key faxed from New York to Godwin Gruber a commitment letter in connection with the anticipated lease transaction. (See id.) This letter specified the terms of the contemplated lease, including the type of aircraft (2002 Beechjet 440A Aircraft, "the Beechjet") and the conditions under which Titan would qualify for an upgrade of the leased aircraft. (See id. ¶ 11, Ex. A.) In connection with this commitment letter, on or about April 16, 2002, Ms. Candice E. Evalenko, ("Evalenko"), Chief Operating Officer of Godwin Gruber and Secretary of Titan mailed to Key in New York a deposit check for $15,750. (See id. ¶ 12.) On or about April 25, 2002, Donald Godwin, in his capacity as Chairman and Chief Executive Officer of Titan, signed the commitment letter and delivered it by facsimile to Key in New York. (See id. ¶ 13.)

In connection with the contemplated lease transaction, Godwin Gruber also provided numerous past financial statements and tax returns to Key in New York. (See id. ¶ 15.) In the month of May 2002, Godwin Gruber also sent, via federal express and facsimile,

comments pertaining to a proposed corporate guarantee that would cover payment of Titan's obligations under the proposed lease transaction. (See id. ¶¶ 17-18.) Godwin Gruber was also in daily telephone contact with Evalenko from April 2002 to June 2002. (See id. ¶ 23.)

Finally, on June 28, 2002, Key entered into a lease agreement with Titan for the Beechjet. At the same time, Godwin Gruber executed the proposed corporate guarantee. (See id. ¶ 22.) The lease agreement provided that it was deemed executed in New York. (See id. ¶ 26, Ex. G, Section 25(g).) Pursuant to the terms of the lease, Titan also made monthly check payments to Key in New York from July 1, 2002, to December 1, 2002. (See id. ¶ 28.) In addition, and in connection with the lease transaction, Godwin Gruber provided tax returns (inclusive of wholly owned Titan) and detailed balance sheets to Key on an annual basis commencing in 2002. (See id. ¶¶ 29, 47.)

In late October 2002, Godwin Gruber, finding that the Beechjet was not suitable to its needs, solicited Key for the lease of an upgraded replacement aircraft. (See id. ¶ 30.) Godwin Gruber was in daily contact with Key from November 2002 to December 2002 surrounding the negotiations for this replacement lease transaction. (See id. ¶ 32.) On or about December 23, 2002, Titan and Key entered into a second aircraft lease agreement (the "Lease") whereby Titan agreed to lease from Key a 2002 Raytheon Aircraft Company Hawker together with two Honeywell engines (the "Aircraft"). (Compl. ¶ 9.) The Lease provides that Titan is in default if it fails to make any payment of rent within ten days after it becomes due. (Id. ¶ 11.) Similar to the initial transaction, the Lease also provides that it is deemed executed in New York. (Id. ¶ 12, Ex. A, Section 25(g).) Titan also provided monthly payments to Key in New York in connection with its obligations under the Lease from December 2002 to January 2006. (See Spada Decl. ¶ 46.)

4

In connection with the execution of the Lease, Godwin Gruber signed a second corporate guaranty (the "Godwin Guaranty"), dated December 23, 2002, that guarantees the full and prompt payment and performance of Titan's obligation under the Lease. (Compl. ¶¶ 14-15.) Following the winding down of operations of Godwin Gruber, Godwin Pappas signed a guaranty, dated December 31, 2004 (the "Godwin Pappas Guaranty," and together with the Godwin Guaranty, the "Guaranties"), that similarly guarantees the full and prompt payment and performance of Titan's obligation under the Lease. (Id. ¶¶ 17-18, Ex. C.)

On or about December 28, 2005, Key assigned its right, title and interest in the Lease to Plaintiffs. (Id. ¶ 21.) On or about December 30, 2005, Titan executed documentation acknowledging Key's assignment of its interest in the Lease to Plaintiffs. (Id. ¶ 22.) In April 2006, Titan informed GE Capital that it could no longer comply with the terms of the Lease and desired to surrender the Aircraft. (Id. ¶ 23.) Pursuant to a voluntary surrender agreement dated April 25, 2006, Titan agreed to return the Aircraft and remain liable for all amounts owned under, and in accordance with, the provisions of the Lease. (Id. ¶¶ 24-25). On May 1, 2006, Titan failed to pay its monthly rent. (Id. ¶ 26.) Consequently, on or about May 23, 2006, GE Capital delivered to Titan a Notice of Default and Termination of Lease. (Id. ¶ 27.) As a result of Titan's default, Godwin Gruber and Godwin Pappas became obligated to pay the amount due under the Lease. (Id. ¶ 28.) However, Godwin Gruber and Godwin Pappas have failed to satisfy their payment obligations under their respective Guaranties. (Id. ¶ 29.)

Plaintiffs assert two causes of action, one against Titan and one against Godwin Gruber and Godwin Pappas. Plaintiffs allege that Titan breached its obligations under the Lease by failing to make the required payments and that Godwin Gruber and Godwin Pappas breached their obligations under the Guaranties by failing to make the payments owed by Titan. (Id. ¶¶ 30-

45.) Plaintiffs seek damages in excess of $75,000.

## DISCUSSION

*Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants move to dismiss the action for lack of personal jurisdiction. A federal court sitting in diversity jurisdiction may exercise personal jurisdiction to the same extent as courts of general jurisdiction in the state in which it sits. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002); Fed. R. Civ. P. 4(k)(1)(A). Federal courts sitting in New York thus engage in a two-step analysis, examining first whether New York law would support the exercise of personal jurisdiction and, if so, turning to the question of whether New York's exercise of jurisdiction would, under the circumstances, be permissible under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. See Bank Brussels Lambert, 305 F.3d at 124.

A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendants. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here, no discovery has taken place and no evidentiary hearing has been held, the plaintiffs can satisfy their burden by making allegations sufficient to establish a prima facie case for the exercise of jurisdiction. See In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 334 (S.D.N.Y. 2000); Drucker Cornell v. Assicurazioni Generali S.P.A., No. 97 Civ. 2262, No. 98 Civ. 9186, 2000 WL 284222 at *1 (S.D.N.Y. Mar. 16, 2000). The Court may rely on the allegations contained in the complaint as well as on affidavits submitted by the parties, and must draw all inferences and resolve any doubts in favor of the plaintiffs notwithstanding contrary

information proffered by the moving parties. <u>See Beatie and Osborn LLP v. Patriot Scientific</u>
<u>Corp.</u>, 431 F. Supp. 2d 367, 386 (S.D.N.Y. 2006); <u>A.I. Trade Financial, Inc. v. Petra Bank</u>, 989
F.2d 76, 79-80 (2d Cir. 1993); <u>In re Sumitomo Copper Litig.</u>, 120 F. Supp. at 335; <u>Drucker</u>
<u>Cornell</u>, 2000 WL 2842222 at *1.

        Plaintiffs assert that New York's long-arm statute authorizes the exercise of
personal jurisdiction over Defendants in this action. Under this statute, a non-domiciliary is
subject to jurisdiction in New York if it transacts any business within the state and the transaction
has a substantial nexus to the cause of action. <u>See</u> N.Y. C.P.L.R. § 302(a)(1); <u>Agency Rent A</u>
<u>Car System, Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996); <u>Jerge v. Potter</u>, No.
99 Civ. 0312E, 2000 WL 1160459 (W.D.N.Y. Aug. 11, 2000). Courts look at "the totality of
circumstances" in determining whether a party has "transacted business" under section 302(a)(1),
including the following where the litigation is contract-related: (1) whether the defendants have
an ongoing contractual relationship with a New York corporation; (2) whether the contract was
negotiated or executed in New York; (3) whether the contract contains a New York choice-of-
law, forum selection or consent to jurisdiction clause; and (4) whether the contract requires
notices or payments to be sent to New York or requires supervision by the corporation in New
York. <u>ESI, Inc. v. The Coastal Corp.</u>, 61 F. Supp. 2d 35, 57 (S.D.N.Y. 1999). While jurisdiction
can be invoked over a defendant who never enters the state, telephone conversations and
correspondence sent to New York by a non-domiciliary are generally insufficient to establish
personal jurisdiction "absent additional evidence that the out of state litigant purposefully availed
himself of the privilege of conducting activities in New York State." <u>Beatie and Osborn LLP</u>,
431 F. Supp. at 388 (citations and internal quotations omitted); <u>see Kulas v. Adachi, KK</u>, No. 96
Civ. 6674, 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997) ("Only in cases where the

telephone call or communication clearly shows that the defendant intends to project itself into

ongoing New York commerce . . . do New York courts sustain jurisdiction based on telephone

calls or facsimile transmissions alone.)

              Here, Plaintiffs have made a <u>prima</u> <u>facie</u> showing that Defendants are subject to

personal jurisdiction under New York's long-arm statute. As an initial matter, the Court notes

that it properly considers Titan's contacts with this forum in determining whether there is

personal jurisdiction over the Godwin entities as well as in connection with any such issues as to

Titan itself. Plaintiffs allege that Titan is a wholly owned subsidiary of Godwin Gruber that

existed only to serve Godwin Gruber's needs of leasing an aircraft. Plaintiffs allege that Godwin

Gruber acted for Titan in all of the relevant negotiations. <u>See</u> <u>In re Ski Train Fire in Kaprun</u>, 230

F. Supp. 2d 376, 384 (S.D.N.Y. 2002) (finding that a parent company can also be subject to

personal jurisdiction based on the actions of its subsidiary as long as the parent's control is so

complete that the subsidiary acts as an agent or department of the company); <u>Bulova Watch Co.,</u>

<u>Inc. v. K. Hattori & Co., LTD</u>, 508 F. Supp. 1322,1334 (E.D.N.Y. 1981) (same). The Court also

imputes the relevant actions taken by Godwin Gruber to Godwin Pappas, which Plaintiffs allege

is a successor entity to Godwin Gruber. (<u>See</u> Spada Decl. ¶ 48.)[1]  Both Guaranties are also

signed by the same person, G. Michael Gruber, as President of Godwin Gruber and as Chief

Executive officer of Godwin Pappas. (<u>See</u> Compl., Exs. B, C.)[2]  The Court therefore finds that,

for purposes of analyzing the jurisdictional issues before the Court, Godwin Pappas is properly

treated as the successor-in-interest to Godwin Gruber and that the latter's actions can be imputed

---

[1]      Defendants proffer an affidavit that seems to corroborate this fact. (<u>See</u> G.
Michael Gruber Aff. in support of Def.'s Mot. to Dismiss ¶ 3.)

[2]      Michael Gruber also signed the Lease as Chief Operating Officer of Titan. (<u>See</u>
Compl., Ex. A)

to Godwin Pappas.  See Linzer v. EMI Blackwood Music, Inc., 904 F. Supp. 207, 213 (S.D.N.Y.

1995) (finding that a successor in interest can be subject to personal jurisdiction based on

activities of its predecessor as long as the companies are one and the same and the predecessor

continues to be part of the successor); Viacom Int'l, Inc. v. Melvin Simon Productions, Inc., 774

F.Supp. 858, 864 (S.D.N.Y. 1991) (same); Fehl v. S.W.C. Corp., 433 F. Supp. 939, 945 (D. Del.

1977) (finding that successor corporation not transacting business in the state is subject to

personal jurisdiction based on specific business transacted by its predecessor if successor was a

continuation of the same corporate entity with a different name); see, e.g., Arnold Graphics

Indus., Inc. v. Independent Agent Center, Inc., 775 F.2d 38, 41-2 (2d Cir. 1985) (citing Fehl and

finding that successor corporation is liable for actions of predecessor if successor is the

continuation of the same entity evidenced by common identity of management and stockholders).

       The allegations and affidavits proffered by Plaintiffs are sufficient to constitute a

prima facie demonstration that Defendants transacted business in New York and that these

contacts are substantially proximate to the alleged unlawful acts.  The Lease signed by Titan

includes a clause providing that the document is to be deemed executed in New York.  (See id.

Ex. A, Section 25(g).)  Plaintiffs have also submitted a declaration alleging that Defendants

solicited Key in New York for the initial Beechjet lease transaction[3] as well as for the upgraded

lease transaction that is at issue in this case (the "Lease"), conducted telephone negotiations with

Key's New York office concerning these transactions, and made certain payments and sent

financial documents in connection with the agreements to New York.  Specifically, the

    [3]    Though Defendants submit an affidavit disputing this proffer (see Donald E. Godwin Aff. in support of Def.'s Mot. to Dismiss ¶ 4), for the purposes of the instant motion, the Court must resolve any doubts in Plaintiff's favor.  See Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 386 (S.D.N.Y. 2006).

declaration alleges that Defendant Godwin Gruber solicited Key twice, first in connection with

an initial lease transaction for an aircraft in April 2002 and again in October 2002 for a

replacement lease, i.e., the December 2002 Lease that is the subject of this litigation. (See id. ¶¶

8, 10, 30, 32.) In connection with the initial lease, Godwin Gruber, through its representative,

delivered a deposit check to Key in New York and signed and delivered a commitment letter to

Key by facsimile. (See id. ¶¶ 12-14.) Godwin Gruber also sent numerous documents, including

past financial statements, to Key in New York in connection with the execution of the initial

lease transaction and the replacement lease transaction (the "Lease"). (See id. ¶¶ 15, 17-18, 34.)

In addition, Key was in daily telephone contact with Godwin Gruber from April 2002 to June

2002 in connection with the initial lease transaction and from October 2002 to December 2002 in

connection with the Lease, concerning negotiations, including several conference calls with

Donald Godwin. (See id. ¶¶ 23, 32.) Finally, Titan sent monthly payment checks to Key in New

York from July 2002 until January 2006 as well as regular financial statements and tax returns to

Key in New York commencing in 2002.[4]  (See id. ¶¶ 28-29, 46-47.)

Here, while Defendants did not enter the state and most of the negotiations

consisted of telephone calls and correspondence, the Court finds that the contacts described in

Plaintiff's proffers, together with Defendants' solicitation of Key in New York, payments made

and documents sent to Key in New York, and the New York execution clause of the Lease, are

sufficient to make a prima facie showing that Defendants purposefully availed themselves of the

benefits of New York law. See, e.g., Rothschild v. Thompson, 433 N.Y.S. 2d 6, 7 (1st Dept.

1980) (telephone and mail contact were sufficient to confer jurisdiction where defendant sent

---

[4]        The declaration does not specify for how long these financial statements and tax
returns were sent to Key.

checks, securities, and an agreement to plaintiff in New York). The Court also finds that these contacts have a nexus to the instant claims. While the action specifically involves payment obligations after Key assigned its interests to Plaintiffs in December 2005, the claims are intimately connected with the obligations under the Lease and Guaranties and therefore proximate to Defendants' contacts to New York. The Court finds in this connection that Plaintiffs' proffers regarding Defendants' contacts pertaining to the initial lease are sufficient to establish a nexus with the instant claims because those contacts were allegedly related to and led up to the final lease transaction (the "Lease") that is the subject of this litigation. See, e.g., Antaeus Enters., Inc. v. SD-Barn Real Estate, LLC, 396 F. Supp. 2d 408, 410 (S.D.N.Y. 2005) (finding nexus even though plaintiff's claims did not directly arise out of New York contacts because claims were based on prior loan that was negotiated in New York)

The Court further finds that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment. The relevant constitutional test requires that Defendants have minimum contacts with the forum state such that assertion of jurisdiction comports with traditional notions of fair play and substantial justice. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002). Defendants have the requisite minimum contacts with the state if they "purposefully availed [themselves] of the privilege of doing business in the forum and could foresee being haled into court there." Id. (internal quotation marks omitted). The exercise of jurisdiction is fair as long as it is reasonable under the circumstances of the case. Id. at 129.

Defendants here have the requisite minimum contacts and, under the circumstances, it is reasonable and fair to subject them to New York jurisdiction. Defendants solicited a company located in New York with which to do business, conducted negotiations with

the company in New York, sent payments to New York, and included a New York execution

clause in the Lease. Defendants therefore should have foreseen being haled into court in New

York and it is reasonable under these circumstances to subject them to New York jurisdiction.

Accordingly, the Court denies Defendants' motion to dismiss the Complaint for lack of personal

jurisdiction.[5]

*Motion to Dismiss for Improper Venue*

Defendants also seek to dismiss the Complaint for improper venue. A diversity

action may be brought in any district where any defendant resides, if all defendants reside in the

same state, and a corporate defendant is deemed to reside in any judicial district where it is

subject to personal jurisdiction at the time the action is commenced. See 28 U.S.C. §§

1391(a)(1) and (c).

As in the case of a motion to dismiss for lack of personal jurisdiction, the burden

of demonstrating proper venue falls on the plaintiff. See E.P.A. ex rel. McKeown v. Port Auth.

of N.Y. and N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). In making its determination, the

Court also accepts all the allegations in the complaint as true unless contradicted by the

defendant's affidavits. Id. "When an allegation [in the complaint] is so challenged [a] court may

examine facts outside the complaint [including affidavits and declarations] to determine whether

venue is proper [and] must draw all reasonable inferences and resolve all factual conflicts in

favor of the plaintiff." Id. (internal quotation marks and citation omitted); Concesionaria DHM

---

[5]     In light of the Court's determination that Plaintiffs have made a sufficient prima
facie showing of jurisdiction under New York's long-arm statute, the Court need
not address the parties' other jurisdictional arguments.

v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (citations omitted); Burrell v. State

Farm Fire & Cas. Co., No. 00 Civ. 5733, 2001 WL 797461, at *3 (S.D.N.Y. July 12, 2001) (in

deciding a motion for improper venue "a court may consider facts outside the pleadings" and

should view the facts in the light most favorable to the plaintiff).

    Plaintiffs have proffered facts sufficient to show that the Southern District of New

York is a proper venue for the instant case. Because this is a diversity action, venue is proper in

any district where any Defendant resides as long as they all reside in the same state. A corporate

entity or multi-member partnership is considered a resident of any district where it is subject to

personal jurisdiction. See 28 U.S.C. § 1391(c); Intuition Consol. Group, Inc. v. Dick Davis

Publ'g Co., No. 03 Civ. 5063, 2004 WL 594651, at *4 (S.D.N.Y. March 25, 2004) (recognizing

that a limited liability company is treated as a corporate entity under 28 U.S.C. § 1391(c)); see

also Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 458 (S.D.N.Y. 2000)

(noting the broad application of section 1391(c) to include unincorporated associations and

multi-member partnerships) (collecting cases). Because all three Defendants are corporate

entities for purposes of Section 1391(c)[6] and all are subject to personal jurisdiction, Defendants

are all residents of this District. Accordingly, the Court denies Defendants motion to dismiss the

Complaint for improper venue.

*Motion to Transfer Venue*

    In the alternative, Defendants move, pursuant to 28 U.S.C. §1404(a), to transfer

venue of this action to the Northern District of Texas. Under this statutory provision, "[f]or the

---

  [6]  The Complaint indicates that Titan and Godwin Gruber are corporations and that
that Godwin Pappas is a multi-member partnership.

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might be brought." 28 U.S.C. §1404(a) (West 2006). However, a plaintiff's choice of forum is generally entitled to considerable weight. See Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001). "The moving party has the burden to establish a clear and convincing showing that a transfer is appropriate and that the motion should be granted." Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 687 (E.D.N.Y. 2005) (citing Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950)). The moving party must supply an affidavit that contains detailed factual statements explaining why the motion should be granted, including information on the potential principal witnesses along with a general statement as to their testimony. See Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d. 203, 208 (S.D.N.Y. 1998). "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are insufficient basis upon which to grant a change of venue under §1404(a)." Id. at 208-9.

Here, Defendants have failed to submit the requisite factual proffer insofar as their application is predicated on the convenience of parties and witnesses. While they include a number of affidavits with their moving papers, none provides a list of potential witnesses or a general statement as to their expected testimony. The Court will not consider the affidavits attached to Defendants' reply papers, as arguments cannot be made for the first time in reply papers. See Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); Matera, 355 F.Supp. at 682-3 (denying motion to transfer because the only affidavits were attached to reply papers which the court did not consider).

Nor does the Court find that the interest of justice warrants transfer to Northern District of Texas. Defendants argue that a similar action is pending in the Northern District of

Texas and that transfer of the instant action is therefore warranted under the interest of justice. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pre-trial discovery can be conducted more efficiently, duplicitous litigation [sic] can be avoided, thereby saving time and expense for both parties and witnesses." Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968). However, the two actions do not involve all of the same parties[7] or the same claims. The Texas suit seeks an injunction enjoining the defendants from obtaining payment upon a letter of credit in connection with the Lease. (See Jamison Decl., Ex. A.)[8] This action, on the other hand, involves claims of breach of contract under the Lease and Guaranties. Moreover, the plaintiff in the Texas action seeks to remand the case back to state court. (See id. Ex. ¶ 7.) Should the plaintiff be successful in its motion to remand, the interests of efficiency would not be served by transferring the instant action. Accordingly, the Court denies Defendants' motion to transfer venue.

---

[7] Key and Texas Capital Bank, N.A., are defendants in the Texas action but are not parties to the instant action. (See Decl. of Jack T. Jamison in support of Def.'s Mot. to Dismiss, "Jamison Decl.," Ex. E.)

[8] The Texas state court granted the plaintiff's temporary injunction application. (See Jamison Decl., Ex. C)

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint or, in the

alternative, to transfer venue, is denied in its entirety.

SO ORDERED.

Dated: New York, New York
January 2, 2007

LAURA TAYLOR SWAIN
United States District Judge

Copies mailed 1/16/07
Chambers of J.